UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
IESHA MCNAIR

Plaintiff,

-against-

THE BROOKLYN HOSPITAL CENTER

Defendant.
--------------------------------------------------------------x

**CV**

**COMPLAINT**

**JURY TRIAL REQUESTED**

**COMPLAINT**

Plaintiff Iesha McNair (hereafter referred to as "Plaintiff"), by counsel, The Parker Law Group P.C., as and for the Complaint in this action against Defendant The Brooklyn Hospital Center (also referred to as "Defendant"), hereby alleges as follows:

**NATURE OF THE CLAIMS**

1. This lawsuit opposes pervasive, ongoing, and inexcusable disability discrimination by the Defendant. In this action, Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages, nominal damages, and attorney's fees, costs, and expenses to redress Defendant's unlawful disability discrimination against Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et. seq.* and its implementing regulations; Section 504 of the Rehabilitation Act ("Section 504") 29 U.S.C. § 794*, et. seq.,* the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York State Executive Law ("Executive Law"); the New York State Civil Rights Law, § 40 *et. seq.*; and the New York City Human Rights Law ("NYCHRL"), Title 8 of the Administrative Code of the City of New York ("Administrative Code"). Defendant is vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2. As explained below, Plaintiff has begged The Brooklyn Hospital Center to obtain and utilize a wheelchair-accessible scale to measure her weight, but they have ignored her pleas. This Defendant made a financial decision to ignore the explicit legal requirements for making their place of public accommodation accessible to persons with disabilities – all in the hopes that it would never be caught. In so doing, Defendant made a calculated, but unlawful, decision that disabled persons are not worthy. The day has come for Defendant to accept responsibility. This action seeks to right that wrong via recompensing Plaintiff and making Defendant's place of public accommodation fully accessible so that Plaintiff can finally enjoy the full and equal opportunity that Defendant provide to non-disabled customers.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188, 29 U.S.C. § 794, and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA and Section 504 of the Rehabilitation Act. The Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant's acts of discrimination alleged herein occurred in this district and Defendant's place of public accommodation that is the subject of this action is in this district.

## PARTIES

5. At all times relevant to this action, Plaintiff Iesha McNair has been and remains currently a resident of Brooklyn, New York.

6. At all times relevant to this action, Plaintiff Iesha McNair has been and remains a wheelchair user. Plaintiff has medical conditions that inhibit walking and restrict body motion range and movement.

7. Defendant The Brooklyn Hospital Center owns the property located at 255 Duffield Street in Kings County, New York (hereinafter referred to as "255 Duffield Street").

8. At all relevant times, Defendant has and continues to operate a medical facility at 255 Duffield Street doing business as The Brooklyn Hospital Center (hereinafter referred to as the "The Brooklyn Hospital Center" premises).

9. Defendant is licensed to and does business in New York State.

10. At all times relevant to this action, Plaintiff Iesha McNair has received medical care and treatment at The Brooklyn Hospital Center.

11. Plaintiff's primary care physician, Dr. Victoria Dantchenko, practices at Duffield Family Medicine at The Brooklyn Hospital Center.

12. Plaintiff sees Dr. Victoria Dantchenko approximately every three months at The Brooklyn Hospital Center.

13. Since at least 2024, Plaintiff has requested that The Brooklyn Hospital Center provide and utilize a wheelchair accessible weight scale to measure her weight.

14. Before 2026, Plaintiff made oral requests to the staff at The Brooklyn Hospital Center to obtain and utilize a wheelchair accessible weight scale to measure Plaintiff's weight.

15. Starting in 2026, Plaintiff made written request to the staff at The Brooklyn Hospital Center to obtain and utilize a wheelchair accessible weight scale to measure her weight.

16. Specifically, on March 11, 2026, Plaintiff wrote to The Brooklyn Hospital Center:

> I am a patient of Dr. Dantchenko at your Family Practice office. I have repeatedly brought up, with both the reception team and the staff taking my vitals, that the office lacks a wheelchair accessible scale. I am now formally requesting that this be addressed. Accurate weight measurement is vital, and accessible equipment is essential for patients like myself.
>
> Could you share your plan or timeline for ensuring accessibility? I am happy to offer any further insight if helpful.

17. The Brooklyn Hospital Center never responded to Plaintiff's March 11, 2026 disability related request and ignored her in the hopes that she would just go away.

18. Frustrated and upset, on April 28, 2026, Plaintiff again wrote a follow-up to the staff The Brooklyn Hospital Center:

> Good morning, I have sent an email to the office manager Ms. Quinones on 3/11/26 regarding the office not having a wheelchair accessible scale accurate weight management. I haven't heard back from her and just wanted to know what is the progress
> thanks.

19. Finally, on April 29, 2026, Plaintiff received the following response:

> Good morning Aisha. I spoke with our clinic management. She will call you for f/up.
> Have a great day!

20. But, to date, The Brooklyn Hospital Center has not provided a wheelchair accessible weight scale and has not measured Plaintiff's weight.

21. Even worse, The Brooklyn Hospital Center has inserted a weight measurement and BMI measurement in Plaintiff's medical chart after each medical visit despite the fact that Plaintiff was not weighed during the visit.

22. Upon the conclusion of a visit, Plaintiff receives an "After Visit Summary" from the Defendant. This summary provides all the details and measurements taken during that medical visit.

23. On July 17, 2025, Plaintiff saw Dr. Victoria Dantchenko at The Brooklyn Hospital Center. There was no wheelchair accessible weight scale to weigh Plaintiff during this visit and her weight was not measured. Incredibly, Defendant inserted a measurement for Plaintiff's weight and BMI into Plaintiff's After Visit Summary.

24. On October 16, 2025, Plaintiff saw Dr. Victoria Dantchenko at The Brooklyn Hospital Center. There was no wheelchair accessible weight scale to weigh Plaintiff during this visit and her weight was not measured. Again, Defendant inserted a measurement for Plaintiff's weight and BMI in the After Visit Summary that was <u>different</u> than the measurement inserted on July 17, 2025.

25. On February 9, 2026, Plaintiff saw Dr. Victoria Dantchenko at The Brooklyn Hospital Center. There was no wheelchair accessible weight scale to weigh Plaintiff during this visit and her weight was not measured. Yet again, Defendant inserted a measurement for Plaintiff's weight and BMI in the After Visit Summary that was <u>different</u> than the measurement inserted on October 16, 2025.

26. On April 22, 2026, Plaintiff saw Dr. Victoria Dantchenko at The Brooklyn Hospital Center. There was no wheelchair accessible weight scale to weigh Plaintiff during this visit and her weight was not measured. Plaintiff's weight was no longer listed

in the After Visit Summary. But Defendant inserted a measurement for Plaintiff's BMI in the After Visit Summary despite the fact that BMI cannot be measured without a weight measurement.

27. On September 21, 2026, Plaintiff saw Dr. Victoria Dantchenko at The Brooklyn Hospital Center. There was no wheelchair accessible weight scale to weigh Plaintiff during this visit and her weight was not measured. Plaintiff's weight was no longer listed in the After Visit Summary. But again, Defendant inserted a measurement for Plaintiff's BMI in the After Visit Summary despite the fact that BMI cannot be measured without a weight measurement.

28. Defendant's practice is both medically dangerous and discriminatory.

29. A patient's weight is essential medical information used for diagnostics and treatment.

30. An accurate weight is important clinical information—not simply a measure of whether someone is overweight. A doctor or trained staff member uses it to guide treatment and detect changes in health.

31. Failing to obtain an accurate weight can have several consequences including:

> **Medication Errors**. Some medicines are dosed according to body weight. An estimated, outdated, or incorrectly recorded weight can lead to too much medication and toxicity, or too little medication and ineffective treatment. The appropriate dosing method depends on the drug.

**Missed Malnutrition or Unexplained Weight Loss**. Comparing measured weights over time helps identify nutritional problems that may otherwise go unnoticed. Missing those changes can delay evaluation and nutritional support, particularly when someone has poor appetite, muscle loss, or slow wound healing.

**Missed Fluid Retention**. In someone with heart failure, a rapid increase in weight can signal fluid buildup and worsening illness. Without reliable measurements, an early warning sign may be missed.

**Misleading Treatment Decisions**. Inaccurate readings can make a patient appear to be gaining or losing weight when they are not, making it harder to assess whether treatment is helping.

32. Too often, individuals who use wheelchairs are not weighed at the doctor's office or hospital, even though patients without disabilities are routinely weighed, because the provider does not have a scale that can accommodate a wheelchair. Medical providers should have an accessible scale with a platform large enough to fit a wheelchair, and with a high weight capacity for weighing an individual while seated in his or her wheelchair.[1]

33. A wheelchair-accessible scale has a large, low platform with a ramp so the person can remain seated in their wheelchair.

[1] See United States Department Of Justice, **Access to Medical Care for Individuals with Mobility Disabilities,** Last updated: June 26, 2020, , Scales, https://www.ada.gov/resources/medical-care-mobility/

34. Below is a picture of a wheelchair-accessible scale:



35. The person rolls onto the platform in their wheelchair. All wheels must be on the platform, clear of the surrounding floor.

36. The wheelchair is then secured and the person stays still. Anyone assisting must avoid leaning on or touching the chair while the reading is taken.

37. The scale subtracts the wheelchair's weight from the combined weight, giving the person's weight.

38. Purchasing and utilizing a wheelchair accessible scale is readily achievable for the Defendant to do and would not cause any negative fundamental alteration in providing medical care to patients.

39. Plaintiff intends on continuing to receive medical services from the Defendant and has medical appointments scheduled in the future with Defendant.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

40. Defendant is a public accommodation as it owns, leases, leases to, controls and/or operates a place of public accommodation, The Brooklyn Hospital Center premises located at 255 Duffield Street, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102(9)).

41. The Brooklyn Hospital Center premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code (§ 8-102(9)) as it is a medical facility, hospital, and professional office of a healthcare provider, operated by a private entity and its operations affect commerce.

42. Defendant has denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

43. Defendant has not complied with its statutory obligations to ensure that their policies, practices, and procedures for persons with disabilities are compliant with the laws. Nor has Defendant made or provided accommodations or modifications for persons with disabilities.

44. Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendant's non-compliance with the laws prohibiting disability discrimination.

## FIRST CAUSE OF ACTION
## (VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)

45. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

46. Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. As a direct and proximate result of Plaintiff's disability, Plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

47. Defendant has and continues to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is a person with a disability. Defendant's policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

48. By failing to comply with the law in effect for decades, Defendant has articulated to persons with disabilities such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

49. The "General Rule" of the ADA is that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

50. Defendant violates the ADA at 42 U.S.C. § 12182(a) by denying Plaintiff the full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations of its public accommodation.

51. The ADA at 42 U.S.C. § 12182(b)(1)(A)(i) states that: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate

in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity."

52. Defendant violates the ADA at 42 U.S.C. § 12182(b)(1)(A)(i) by denying Plaintiff, because of his disability, the opportunity to participate in and benefit from the services, facilities, privileges, advantages, or accommodations offered by the Defendant.

53. The ADA at 42 U.S.C. § 12182(b)(1)(B) states that "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

54. Defendant violates the ADA at 42 U.S.C. § 12182(b)(1)(B) by failing to afford the disabled Plaintiff with its services, facilities, privileges, advantages, and accommodations in a setting that is integrated with non-disabled persons.

55. Defendant fails to take measures to integrate people with disabilities and instead outright exclude people with disabilities like Plaintiff.

56. The ADA at 42 U.S.C. § 12182(b)(2)(A)(ii) defines discrimination as "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."

57. Defendant violates the ADA at 42 U.S.C. § 12182(b)(2)(A)(ii) by failing to make reasonable modifications in their policies, practices, or procedures that would result in the disabled Plaintiff being able to enjoy its services, facilities, privileges, advantages, or accommodations.

58. The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation. 28 C.F.R. § 36.201(b).

59. Defendant violates the ADA at 42 U.S.C. § 12182(b)(2)(A)(iii) by failing to take all the necessary measures to "ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals."

60. Defendant violates the ADA at 42 U.S.C. § 12182(b)(2)(A)(iii) by failing to take steps necessary to ensure that no individual with a disability is excluded, denied services, and/or segregated.

61. The The Brooklyn Hospital Center premises are not fully accessible and fail to provide an integrated and equal setting for people with disabilities, in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

62. Defendant failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304. It would be readily achievable to make Defendant's place of public accommodation fully accessible.

63. By failing to remove the barriers to access where it is readily achievable to do so, Defendant has discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

64. In the alternative, Defendant has violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

65. Defendant's failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

66. Defendant has and continues to discriminate against Plaintiff in violation of the ADA by failing to maintain and/or create a wheelchair accessible public accommodation.

**SECOND CAUSE OF ACTION**
**(VIOLATIONS OF THE SECTION 504 OF THE REHABILITATION ACT)**

67. Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

68. Plaintiff is an individual with a disability as defined by the Rehabilitation Act, 29 U.S.C. § 705(20).

69. Section 504 of the Rehabilitation Act of 1973 (hereinafter also referred to as "Section 504"), 29 U.S.C. § 794, and the regulations promulgated thereunder, prohibit discrimination against people with disabilities by recipients of federal funding. Section 504 provides, in pertinent part, that:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

70. Section 504 defines "program or activity" in part as "an entire corporation, partnership, or other private organization, or an entire sole proprietorship . . . which is principally engaged in the business of providing . . . health care." 29 U.S.C. § 794(b)(3)(A)(ii).

71. Defendant has received federal financial assistance at all relevant times.

72. Through the acts and omissions alleged herein, Defendant has, solely because of Plaintiff's disabilities, excluded Plaintiff from participation in defendant's programs and activities and denied plaintiff the benefits of Defendant's programs and activities, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794, et. seq. and the regulations promulgated thereunder.

73. Defendant's acts and omissions described herein violate the equal access and nondiscrimination provisions of Section 504 and the regulations promulgated thereunder and have resulted in injury to Plaintiff.

74. Because of Defendant's failure to comply with the above-mentioned laws, Plaintiff was and has been denied the benefits of Defendant's facility.

75. Defendant acted with deliberate indifference to Plaintiff's rights guaranteed under Section 504.

76. Defendant has had actual knowledge of the discrimination due to, among other things, the open and obvious nature of the discriminatory condition and deliberately decided not to address the discrimination and institute corrective measures.

77. As a proximate result of Defendant's violations of Section 504, Plaintiff has been injured and continues to be injured, as set forth herein in an amount to be determined at trial.

## <u>THIRD CAUSE OF ACTION</u>
## (VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)

78. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

79. Plaintiff has various medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life

activities of both walking and body motion range. Plaintiff therefore has a disability within the meaning of the Executive Law § 296(21).

80. In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

81. By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

82. Defendant has and continues to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation because Plaintiff is a person with a disability.

83. Defendant discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation.

84. Defendant has failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL (Executive Law § 296(2)(c)(iii)).

85. In the alternative, Defendant has failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of NYSHRL (Executive Law § 296(2)(c)(iv)).

86. It would be readily achievable to make Defendant's place of public accommodation fully accessible.

87. It would not impose an undue hardship or undue burden on Defendant to make their place of public accommodation fully accessible.

88. As a direct and proximate result of Defendant's unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

89. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)

90. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

91. Plaintiff has various medical conditions that separately and together impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range - and thus Plaintiff has a disability within the meaning of the NYCHRL (Administrative Code § 8-102(16)).

92. Defendant has and continues to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public

accommodation all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

93. Defendant has and continues to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) because of the violations of the ADA as alleged herein.

94. Defendant has discriminated, and continues to discriminate, against Plaintiff in violation of the NYCHRL (Administrative Code § 8-107(4)) by designing, creating, and/or maintaining an inaccessible commercial facility/space.

95. Defendant has subjected, and continue to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

96. Defendant's policies and procedures inclusive of the policies of refusing to expend funds to design, create and/or maintain an accessible commercial facility/space is a discriminatory practice in violation of NYCHRL (Administrative Code § 8-107(4)).

97. In violation of the NYCHRL (Administrative Code § 8-107(6)), Defendant has and continues to, aid and abet, incite, compel, or coerce others in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

98. Defendant's conduct also violates the NYCHRL, Administrative Code 8-107 (17), which states that "an unlawful discriminatory practice . . . is established . . .

[when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

99. Because Defendant's public accommodation is not readily accessible and usable by people with disabilities, Defendant has demonstrated a policy or practice that has a disproportionately negative impact on people with disabilities (including Plaintiff).

100. Defendant's conduct constitutes an ongoing and continuous violation of the NYCHRL. Unless Defendant is enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law. In particular, Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendant's public accommodation.

101. As a direct and proximate result of Defendant's unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, and embarrassment.

102. Upon information and belief, Defendant's long-standing refusal to make its place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the NYCHRL.

103. By failing to comply with the law in effect for decades, Defendant has articulated to persons with disabilities such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of its public accommodation.

104. Defendant engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so

reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL (Administrative Code § 8-502).

105. By refusing to make its place of public accommodation accessible, Defendant has unlawfully profited from its discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that it should have lawfully expended to pay for a fully compliant and accessible space. Defendant's unlawful profits plus interest must be disgorged.

106. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)**

107. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

108. Defendant discriminated against Plaintiff pursuant to New York State Executive Law.

109. Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each and every violation.

110. Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

**INJUNCTIVE RELIEF**

111. Plaintiff will continue to experience unlawful discrimination because of Defendant's failure to comply with the above-mentioned laws. Therefore, injunctive relief is necessary to order Defendant to alter and modify its place of public accommodation and its operations, policies, practices, and procedures.

112. Injunctive relief is also necessary to make Defendant's facilities readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

113. Injunctive relief is further necessary to order Defendant to provide auxiliary aids or services, modification of its policies, and/or provision of alternative methods, in accordance with the ADA, NYSHRL, and the NYCHRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendant, jointly and severally, in favor of Plaintiff that contains the following relief:

A. Enter declaratory judgment declaring that Defendant has violated the ADA and its implementing regulations, NYSHRL and NYCHRL and declaring the rights of Plaintiff as to Defendant's place of public accommodation, and Defendant's policies, practices, and procedures;

B. Issue a permanent injunction ordering Defendant to comply with the ADA, Section 504, NYSHRL and NYCHRL, including but not limited to the violations set forth above;

C. Retain jurisdiction over the Defendant until the Court is satisfied that the Defendant's unlawful practices, acts and omissions no longer exist and will not reoccur;

D. Award Plaintiff compensatory damages and nominal damages because of Defendant's violations of the Section 504, NYSHRL and the NYCHRL;

E. Award Plaintiff punitive damages to punish and deter the Defendant for its violations of the NYCHRL;

F. Award Plaintiff the monetary penalties for each violation of the law pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

G. Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the NYCHRL, Section 504 and the ADA; and

H. For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: October 8, 2026
New York, New York

Respectfully submitted,

**THE PARKER LAW GROUP P.C.**

By:______________________

Glen H. Parker, Esq.
Attorneys for Plaintiff
28 Valley Road, Suite 1
Montclair, New Jersey 07042
Telephone: (347) 292-9042
Email: ghp@parkerlawusa.com